June Term,
1860.

State ex rel.
HARNEY
v.
HASTINGS.

## STATE ex rel. HARNEY VS. HASTINGS.

Sec. 61, chap. 320, R. S., 1858, authorized the commissioners of school and university lands to publish the list of forfeited lands lying in any county, in only one newspaper published in such county.

Said commissioners made an order for the publication of such list for a certain county, in a newspaper published therein by A, and notified A of said order, and requested him to do the work, but after such notice and request, a majority of the commissioners made and entered upon their book another order, directing the publication of said list in another paper, published in said county by B. No notice of the making of the second order, or of a revocation of the first, was given to A, who performed the work as directed and received payment therefor from the state. B published the list also, under the second order, and applied for a mandamus to compel the treasurer of state to pay his account therefor, which had been audited by the proper officer : *Held,* that the commissioners could not relieve the state from its contract with A, by revoking the first order without notifying him of the withdrawal of their proposition before he had accepted it.

*Held,* also, that it was not material whether A had actually notified the commissioners of his acceptance of their proposal to him, or had done any act of acceptance, before the second order was made, if he did accept their proposal within a reasonable time after it was made, and before he had any notice of its revocation.

*Held,* also, that B had no valid claim against the state for work done under such second order, that order having been made without authority of law.

APPLICATION for a Mandamus.

The case is stated in the opinion of the court.

*Smith, Keyes & Gay,* for relator.

*J. H. Howe,* Attorney General, for respondent.

October 16.

*By the Court,* PAINE, J. This was an application for a mandamus to compel the treasurer to pay two accounts which had been audited in favor of the relator, one for publishing the list of forfeited school lands, and the other for publishing the list of forfeited swamp lands, in the county of Oconto, on the order of the school land commissioners. The return of the treasurer sets forth, that previous to the making of the order under which the relator did the work, another order had been made by the commissioners, directing that

June Term,
1860.

State ex rel.
Harney
v.
Hastings.

the same work should be done by one Ginty, who, it is aver-
red, published at that time the only paper published in that
county. It is also averred, that this order was, before the
making of the last one, transmitted to Ginty, and that it was
duly accepted and acted on by him; that he did the work
under it, and that his account for it had been regularly au-
dited and paid. This return is demurred to, and the deci-
sion turns entirely on the question whether the two commis-
sioners who made the last order, under which the relator
acted, had any lawful authority to make it. If they had
not, it follows from the views which this court has repeated-
ly expressed on that subject, that it was not binding on the
state. Their authority is found in sec. 61, chap. 320, R. S.,
1858, which requires them to advertise the list of forfeited
lands in the newspaper published at Madison, in which the
laws are published, " and also in a newspaper published in
the county where the lands lie, if there be any." The com-
missioners then made an order that the publication for Ocon-
to county should be done in the Pioneer. This order Ginty,
the publisher of that paper, was notified of, and he was re-
quested by the commissioners to do the work provided for.
This, it clearly appears from the return, occurred before the
making of the last order. The return also avers, that Ginty
duly received, accepted and acted upon this request of the
commissioners. But it may be doubtful whether it could be
assumed from this, that he accepted the contract offered be-
fore the last order was made, though it is also expressly aver-
red that the lists were delivered to his agents at Madison
for publication, according to the order, before the making of
the last one. But whether he actually notified the commis-
sioners that he accepted the contract, or whether he actually
did any act of acceptance before the last order was made,
seems to us immaterial, provided he accepted it within a rea-
sonable time, and before he received notice that the proposi-
tion or offer, on the part of the commissioners, was revoked.
For we do not think that after they had notified him of the
order, and requested him to do the work, they could relieve
the state from the contract by merely revoking the order,
without also notifying him, and withdrawing their proposi-

June Term,
1860.
_____

STATE ex rel.
HARNEY
v.
HASTINGS.

tion, before he had accepted it by entering upon the work or otherwise. There is no allegation that he was notified of any other order, or that the request to him to do the work was ever withdrawn, but he did in fact enter upon and perform the work according to the order, and the secretary of state, who was one of the commissioners who made the last order, audited and allowed his account therefor. It is clear, therefore, that the state was bound whenever he accepted the proposition of the commissioners, either by entering upon the work, or in such other manner as its terms could be fairly held to require. And they could only restore their power to make a contract with another party, by taking the necessary steps to revoke their order to him before it was accepted by him so as to become a binding contract. Even if the last order, therefore, could be construed into a revocation of the first, it failed to prevent the contract with Ginty from becoming effectual for want of notice to him. The power of the commissioners, when they had made a binding contract, was exhausted, and could be revived only by that contract being rescinded, or the failure of the party to perform. For the statute gives them the power to advertise in only one newspaper in the county, and when they had once bound the state for that, they had no power to bind it further. Otherwise, under a power to publish in one paper, they might publish in twenty. Such a doctrine can only be sustained upon the assumption that where the law gives such officers certain powers, they may exercise others not given, as effectually as those that are.

It may be a case of hardship, if the relator was unaware of the fact that the commissioners had already exhausted their power by making a valid contract with another party. But that cannot change the law, nor enlarge the power of the commissioners so as to enable them to publish in two papers, when the law says they may publish it in one only. It must fall, therefore, within the repeated decisions of this court, that the acts of officers beyond their lawful authority, can create no legal claim against the state, and none which the secretary has authority to audit.

The demurrer to the return must be overruled.